Davis, J.,
delivered the opinion of the court:
At Springfield, Ohio, is a money-order post-office; plaintiff was postmaster there from February, 1877, to January, 1885, receiving a salary of from $2,600 to $3,100 a year. He also retained certain commissions upon this money-order business, commissions prescribed in section 4047 of the Revised Statutes, and reported this fact in due course to the Post-office *133 Department, wliere Ms action during some four or five years excited no comment. The sum of $1,000 per annum was expressly allowed Mm out of the commissions from money-order business. In August, 1882, a post-office inspector examined Ms office, and held that as the plaintiff bad employed post-office clerks upon money-order business, be should refund to the Government the sum which this inspector estimated was the value of these clerks’ services in that branch of the post-office business. The plaintiff protested against this ruling, but under official pressure did refund the sum fixed by the inspector.
We must now discover the true meaning of section 4047 of the Devised Statutes, for upon that turns this the first branch of the case at bar.. This is the section:
“Sec. 4047. Postmasters at money-order offices may be allowed, as compensation for issuing and paying money orders, not exceeding one-tliird of the whole amount of fees collected on orders issued and one-fourth of one per centum on the gross amount of orders paid at their respective offices, provided such compensation, together with the postmaster’s salary, shall not exceed four thousand dollars, except in the case of the postmaster at New York City.”
Plaintiff contends that this statute gives him the commissions for money-order business as compensation for increased responsibility and personal services; while the defendants urge that the fees made up afund from which the clerical expenses of the money-order business were to be defrayed, perhaps with, perhaps without, personal profit to the postmaster. Upon theplaintiff’s theory the postmaster, through these fees, received an addition to his salary for additional responsibility and labor, the amount of which is necessarily gauged by the amount of the fees; while defendants’ theory places the postmaster rather in the position of a contractor, who is to defray the expenses of the money-order business at his own financial risk.
The point arises in this case from the fact that plaintiff employed Ms clerks indiscriminately, as occasion demanded, upon the various classes of work required by Ms official duty, and drew no line between money-order and other post-office business. Sometimes he attended to the money-order business himself, sometimes he attended to ordinary postal business, and so it was with the assistant postmaster, the postal clerks, and the clerks paid by the postmaster.
*134 The first reading of the statute leads to the belief that it intended to give the money-order postmasters increased pay for money-order business; it twice speaks of the fees as compensation: First, “Postmasters at money-order offices maybe allowed as compensation for issuing and paying money-orders” certain fees specified. Second, it provides that “such compensation, together with the postmaster’s salary,” shall not exceed a certain sum. This latter provision is peculiarly suggestive, for it recognizes two classes of pay, the sum of which shall not exceed a fixed maximum. The statute seems, upon this theory of interpretation, quite in accordance with governmental methods, which do not tend to hamper a responsible executive officer in the wise and economical assignment of his subordinates to different duties in his office as occasion and peculiar business demands may from time to time require, and which do not favor the “farming out” of Government business to a contractor who is to incur the risk of personal gain or loss in its management.
This view is strengthened by section 4048 of the Revised Statutes, which authorizes the Postmaster-General to pay out of the proceeds of the money-order business the cost of stationery and such incidental expenses as are necessary for the transaction of that business: expenses properly to be borne by the postmaster if he be in effect a contractor.
Sections 4047 and 4048 of the Revised Statutes were taken from the Act of June 2,1872 (17 Stat. L., 283), and in that act was this clause, which does not appear in the revision:
“That the Postmaster-General may employ such an additional number of clerks at money-order offices as may be necessary for conducting the operations of the money-order system, who shall be paid out of the proceeds of the money-order business.”
We do not think it necessary to decide whether the repealing clause of the Revised Statutes .repealed this paragraph of the act of 1872. Nevertheless, it is interesting to note as bearing upon this point a letter written November 24, 1877, by the Chief Justice of the United States to the clerk of the Supreme Court., in which he says “that in an informal manner I have consulted my brethren upon this matter, and that they concur with me in this opinion.” The opinion so referred to is thus stated, after comment upon the repealing clause of the Revised Statutes:
*135 “It seems clear from this that if a particular section of an act has neither been repealed nor superseded by subsequent acts, nor incorporated into the Eevised Statutes, and is general and permanent in its nature, it is not within the reason and ground of the repeal, but has been accidentally overlooked or omitted by the revisers, and should not be regarded as within the intent and meaning of the repealing clause.” (First Comptroller’s Opinions, vol. 4, p. 101.)
Section 3857 seems also to confirm the theory we adopt as to this money-order business when it prohibits the postmaster from receiving or retaining for himself in the aggregate more than “the amount of his salary and his commission on the money-order business, as hereinafter provided,” thus classing the money-order commission with salary as an emolument of office.
An argument is drawn from the use of the word “may” in section 4047, and the theory is urged that thus discretion is left in the Postmaster-General to allow commissions upon money-order business as he may see fit, within a certain maximum.' There is force in this position, particularly if this one section be taken alone, for the use of the word “may” and the following words, “ not exceeding ” a percentage of tbe fees collected, would seem to leave the power to grant any fees or to limit fees within a certain prescribed maximum entirely in the discretion of the Postmaster-General.
The Postmaster-General has power to make regulations not inconsistent with law for the government of the Department (Rev. Stat., sec. 161), and in 1879 regulations were issued containing this provision (sec. 970):
“ If the entire receipts from the rates of compensation allowed by section 968 [which is section 4047, Rev. Stat.] for the money-order business at any post-office should, when added to the annual salary of the postmaster, exceed the sum of 84,000 per annum, or $1,000 per quarter, he must account to the Department for the surplus of such receipts. At the close of each quarter postmasters will be duly notified by the auditor of the amount allowed for commissions and instructed as to the proper entry to be made thereof. Postmasters whose total compensation from all sources amounts to $4,000 per annum can receive nothing in addition thereto for the transaction of the money-order business, but may be allowed by the Postmaster-General a fixed sum for the necessary clerical force actually employed in that business. Postmasters are strictly prohibited from employing in the transaction of their money- *136 order business any portion of the time of tbeir clerks paid for out of the allowance from post funds from clerk hire.”
Thus was provided a method for exercising- tire discretion of the Postmaster-General as to the fees.
Postmasters whose receipts from salary and money-order fees exceeded $4,000 must account for the surplus. At the close of each quarter the Auditor was to notify each postmaster of the amount allowed for commissions. An allowance was to be made for necessary clerical force to those postmasters whose total compensation exceeds $4,000. This plaintiff did not receive the maximum compensation and strictly should have been notified each quarter by the Auditor of the amount allowed him for commissions. His allowance was, in fact, fixed at $1,000, and the commissions upon the money-order business received at his office were duly accounted for. The allowance of $1,000 was expressly coupled with a reference to the regulation already cited and with the statement that it was considered by the Department as ample to pay for the necessary clerical labor in the money-order division.
We are of opinion that the fees for money-order business are intended for the postmaster’s compensation or personal emolument; that within certain limits the Postmaster-General may fix those fees. Therefore, if the Postmaster-General fails to fix them or refuses to fix them in any case, the postmaster is without judicial remedy, for an omission in this regard is equivalent to a refusal to make any allowance.
From all this it results that plaintiff was entitled from the money-order business to $1,000 per year, out of which he should have paid the clerical force employed in that business. He did not pay all this force out of the allowance, and the defendants were entitled to recover from the postmaster the cost of the services of their clerks while engaged on money-order business. It was, however, incumbent upon them to show the amount of this cost; and the arbitrary action of the inspector, followed by the payment of $1,500 under protest, can. not be accepted as establishing this amount or as debarring the plaintiff from any rights he may have had in this regard at the time of the payment. The position of the parties, then, was this: Defendants could have recovered from plaintiff the cost of the clerical force paid by the Government and em *137 ployed in the money-order business, and in that proceeding defendants would bave been forced to prove that cost.
Tbe fact that the plaintiff under the circumstances turned in any sum to the Government under pressure and with protest does not change his position in law; this upon the authority of Mosby v. The United States, (24 C. Cl. R. 1.) Plaintiff therefore will recover in this branch of his case, $1,500.
As to the period after June 30, 1882, plaintiff’s right to fees depends upon a.n allowance, by way of compensation, having been made by the Post-Office Department. No such allowance has been made by way of compensation for this period, though an allowance has been made to pay his money-order clerks, which sum has been used for that purpose. Plaintiff therefore will not recover in this branch of his case.
Judgment for plaintiff in the sum of $1,500.
Weldon, J., did not sit in this case and took no part in the decision.